# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN DOE ONE; JOHN DOE TWO; JOHN DOE THREE; and JOHN DOE FOUR, on behalf of themselves and all similarly situated individuals,<br><br>*Plaintiffs,*<br>v.<br><br>CAREMARK, L.L.C.;<br>FISERV, INC.;<br>FISERV SOLUTIONS, LLC; and<br>DEFENDANTS DOES 1–10,<br><br>*Defendants.* | No. 2:18-cv-00238-EAS-CMV<br><br>No. 2:18-cv-00488-EAS-CMV<br><br>(Consolidated for all purposes)<br><br><u>CLASS ACTION</u> |

**REPLY IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs submit this brief reply to update the Court on the Class's response to the Notice of Settlement. There have been no timely objections to Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Dkt. #96.

Rather, the response from the class as a whole has been positive. The deadline for Class Members to file claims, opt out of the Settlement Agreement, or object to the Settlement was December 20, 2019. There were no objections and only one opt-out (representing 0.02% of the Class Members). Shaffer Decl. (Ex. A.) at 2. There were 284 Class Members who filed timely claims for payment above and beyond the $400 to which each of the 4,505 Class Members is entitled.[1] *Id.* The number of Class Members who filed claims represents 6.35% of the Class. This percentage is comparable with the settlement in *Beckett v. Aetna*, which was discussed in Plaintiffs' motion for final approval. Dkt. #96 at 14–16. In that case, whose settlement was structured similarly to this one, 7.88% of class members submitted claims. Dkt. #70-2 at 1, Case No. 17-cv-3864 (E.D. Pa.). Although the claims must be reviewed for compliance with the requirements of the Settlement Agreement, if they were paid in full, they would total $674,058.53. Ex. A at 2. The settlement administrator has estimated that its fees will be approximately $155,471.72 by the time its work is finished. *Id.* Based on these figures, it appears that the Class Members who did not opt out will receive substantially more than $400; their automatic payment will be approximately $510. *Id.* at 2–3. Plaintiffs continue to believe that they have obtained an excellent result for the class.

There are two housekeeping matters that require small revisions to the proposed final approval order. Now that the deadline for objections has passed without any objections, the Order

---

[1] Two claims were received after the deadline. It is Plaintiffs' recommendation those claims be accepted for review.

1

should be amended to reflect that fact. In addition, after the Plaintiffs submitted their Unopposed Motion and Memorandum in Support of an Award of Attorneys' Fees, Costs, and Service Payments, Dkt. #97, Whatley Kallas received a partial refund of the mediator fee it paid, in the amount of $1,186.94. Declaration of Henry Quillen, Ex. B. Therefore, Whatley Kallas is reducing its request for reimbursement of expenses from $16,728.42 to $15,541.48, and the Plaintiffs are reducing their total request for reimbursement of expenses from $50,289.72 to $49,102.78. A revised proposed final approval order is attached as Exhibit C.

While there are no formal timely objections to the settlement, on January 2, an individual filed a request with the Court to appear at the final approval hearing, asking the Court to hold back a portion of the settlement fund (that would be otherwise distributed to Class Members) while another attempt is made to locate the 426 Class Members whose notice was returned as undeliverable.[2] Case No. 2:18-cv-238, Dkt. #98; Case No. 2:18-cv-488, Dkt. #76. The request is essentially a response to the notice and allocation plan contained in the settlement agreement. Even if the Court were to review this as some type of formal objection to the settlement, which it is not, it should be rejected because it was filed well after the December 20 deadline for objections. *In re Auto. Parts Antitrust Litig.*, No. 2:12-CV-00203, 2017 WL 3499291, at *7 (E.D. Mich. July 10, 2017) ("Courts routinely strike objections to class action settlements that are filed after the objection deadline.").

The fact is that the request, if granted, would not improve the Court-approved notice plan and is based on a misunderstanding of how the class list was created. The class member's proposal is that a list of the Class Members whose mail was returned as undeliverable be given to the Ohio

---

[2] When the Plaintiffs moved for final approval, 420 Class Members' notices had been returned as undeliverable. Dkt. #96 at 9–10. That figure is now 426. Ex. A at 2.

Department of Health so that it can search its records for a current address. The problem is that Caremark *already* used the Ohio Department of Health's address database, which it receives on a regular basis in connection with its administration of OhDAP, when compiling the addresses of the Class Members. It was updated right before the notice was to be disseminated. Therefore, searching the Ohio Department of Health's records will simply duplicate a process that has already been carried out. There is no reason to believe that another search will result in the discovery of a substantial number of new addresses.[3] To hold back a portion of the settlement funds would serve no useful purpose. In fact, a new search may not even be possible, as the Court cannot compel the Ohio Department of Health, a non-party, to participate in the administration of this settlement.

Additionally, while the request speculates that an undeliverable rate of 10% is unreasonably high, it actually represents an excellent result. According to a recent study by the Federal Trade Commission, the average percentage of class members who are not reached in consumer class action notice mailings is 12%, higher than the percentage here. Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* at 29 (Sept. 2019), https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf. In its guidance to judges, the Federal Judicial Center states, "It is reasonable [for notice] to reach between 70–95%." Federal Judicial Center, *Judges Class Action Notice and Claims Process Checklist and Plain Language Guide* at 3 (2010), https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf; *see also* Federal Judicial Center,

---

[3] The proposal did not call for the use of a third-party address database to attempt to locate Class Members, as providing Class Members' personal information to a third party without their consent would raise many of the same issues of privacy that led to this suit. *See* Ex. A at 2 (explaining why this method was not attempted).

3

*Managing Class Action Litigation: A Pocket Guide for Judges* at 27 (3d ed. 2010) ("The norm is in the 70–95% range."). Here, the statistics show that the notice program is reasonable, as the reach of 90% by direct mail alone is at the high end of this range, and does not include further notice through publication, a press release, a website, a toll-free number, and OhDAP case workers, all of which were added to the notice program in an effort to notify Class Members who did not receive notice by mail.[4] *See* Dkt. #96 at 10. Therefore, the notice program as a whole that the Court approved is reasonable. *See Fidel v. Farley*, 534 F.3d 508, 513–15 (6th Cir. 2008) (affirming approval of a settlement in which 20% of the class did not receive timely notice); *In re Polyurethane Foam Antitrust Litig.*, 135 F. Supp. 3d 679, 684 (N.D. Ohio 2015) (affirming approval of settlement where direct mail that reached less than 65% of the class, supplemented with publication notice, a website, and a toll-free number, was the "best notice practicable"). The settlement should be finally approved.

## CONCLUSION

For the reasons stated in their motion and this reply, Plaintiffs respectfully request that the Court approve the Settlement and enter the revised form of order submitted herewith.

---

[4] While Plaintiffs would naturally prefer to have reached 100% of the Class Members, Plaintiffs correctly anticipated that some would be difficult to locate. Accordingly, the settlement was publicized and potential Class Members and permitted potential class members sixty days to self-identify or provide updated contact information. Unfortunately, there is no other feasible mechanism to obtain more current information for former OhDAP participants without running afoul of the HIV privacy laws at issue and spending a significant sum on further publication notice that will unnecessarily deplete the settlement funds. Here, those funds for unlocated Class Members will be equitably redistributed amongst the locatable Class Members.

DATED: January 6, 2020                    Respectfully submitted,

 /s/ *Matthew R. Wilson*                    /s/ *Henry C. Quillen*
MEYER WILSON CO., LPA                     WHATLEY KALLAS LLP
David P. Meyer (0065205)                  Henry C. Quillen (admitted *pro hac vice*)
Matthew R. Wilson (0072925)               159 Middle St., Suite 2C
Michael J. Boyle, Jr. (0091162)           Portsmouth, NH 03801
1320 Dublin Road, Ste. 100                Telephone: (603) 294-1591
Columbus, OH 43215                        Facsimile: (800) 922-4851
Telephone: (614) 224-6000                 hquillen@whatleykallas.com
Facsimile: (614) 819-8230
dmeyer@meyerwilson.com
mwilson@meyerwilson.com

KAPLAN FOX & KILSHEIMER LLP               TERRY L. KILGORE (0014692)
Laurence D. King (admitted *pro hac vice*) 1113 Northridge Oval, Bldg.13
Matthew B. George (admitted *pro hac vice*) Brooklyn, OH 44144-3262
350 Sansome Street, Suite 400             Telephone: (614) 648-6009
San Francisco, CA 94104                   Facsimile: (216) 600-5494
Telephone: 415-772-4700                   tksquire13@gmail.com
Facsimile: 415-772-4707
Email: lking@kaplanfox.com
Email: mgeorge@kaplanfox.com

Joel B. Strauss (admitted *pro hac vice*) WHATLEY KALLAS LLP
850 Third Avenue                          Joe R. Whatley (admitted *pro hac vice*)
New York, NY 10022                        Edith M. Kallas (admitted *pro hac vice*)
Telephone:  212-687-1980                  152 West 57th St., 41st Floor
Facsimile:  212-687-7714                  New York, NY 10019
Email:  jstrauss@kaplanfox.com            Telephone: (212) 447-7060
                                          Facsimile: (800) 922-4851
                                          jwhatley@whatleykallas.com
                                          ekallas@whatleykallas.com

LAMBERT LAW FIRM, LLC                     WHATLEY KALLAS LLP
Marnie C. Lambert (0073054)               Alan M. Mansfield (admitted *pro hac vice*)
4889 Sawmill Road, Suite 125              16870 W. Bernardo Drive, Suite 400
Columbus, OH 43235                        San Diego, CA 92127
Telephone: (888) 203-7833                 Telephone: (858) 674-6641
Facsimile: (888) 386-3098                 Facsimile: (855) 274-1888
                                          amansfield@whatleykallas.com

                                          CONSUMER WATCHDOG
                                          Jerry Flanagan (admitted *pro hac vice*)
                                          6330 San Vicente Blvd. Suite 250
                                          Los Angeles, CA 90048
                                          Telephone: (310) 392-0522

5

Facsimile: (310) 392-8874
jerry@consumerwatchdog.org

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed via the Court's ECF system and was thereby served on all parties.

By: /s/ *Henry C. Quillen*
Henry C. Quillen

*One of the Attorneys for Plaintiffs*